IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WESTCHESTER FIRE INSURANCE COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> POLYMER NATION, LLC, ROCK-TRED II, LLC ) <br> a/k/a COB HOLDING COMPANY, LLC, ) <br> PRIME COAT II, LLC, ZAHNER HANSEN ) <br> CONSTRUCTION GROUP, INC., PRIME COAT ) <br> CORPORATION, and CHRISTOPHER O'BRIEN, ) <br> ) <br> Defendants. ) | Case No. |

**COMPLAINT**

COMES NOW Plaintiff Westchester Fire Insurance Company ("Surety"), by and through the undersigned counsel, and states the following for its Complaint against Defendants Polymer Nation, LLC ("Polymer"), Rock-Tred II, LLC a/k/a COB Holding Company, LLC ("Rock-Tred"), Prime Coat II, LLC ("PC II"), Zahner Hansen Construction Group, Inc. ("Zahner"), Prime Coat Corporation ("PCC") and Christopher O'Brien ("C. O'Brien") (collectively, the "Defendants"):

**I.     PARTIES**

1. Surety is a Pennsylvania corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business located in Philadelphia, Pennsylvania. Thus, Surety is a citizen of the Commonwealth of Pennsylvania for the purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

2. Polymer is a limited liability company formed under the laws of the State of Illinois with a principal place of business located in Gurnee, Illinois. Upon information and belief,

Polymer's member(s) are all citizens of the State of Illinois. Thus, Polymer is a citizen of the State of Illinois for the purposes of diversity jurisdiction under 28 U.S.C. § 1332(a). Polymer can be served with service of process through its registered agent Sandra Burkett at 736 Florsheim Drive, Suite 10, Libertyville, Illinois 60048.

3. Rock-Tred is a dissolved limited liability company formed under the laws of the State of Illinois with a principal place of business located in Waukegan, Illinois. Upon information and belief, Rock-Tred's member(s) are all citizens of the State of Illinois. The Office of the Illinois Secretary of State indicates that Rock-Tred was involuntarily dissolved effective October 12, 2018. Upon information and belief, Rock-Tred can be served with process through Sandra Burkett at 736 Florsheim Drive, Suite 10, Libertyville, Illinois 60048.

4. PCII is a limited liability company formed under the laws of the State of Illinois with a principal place of business located in Gurnee, Illinois. Upon information and belief, PC II's member(s) are all citizens of the State of Illinois. Thus, PC II is a citizen of the State of Illinois for the purposes of diversity jurisdiction under 28 U.S.C. § 1332(a). PC II can be served with service of process through its registered agent Sandra Burkett at 736 Florsheim Drive, Suite 10, Libertyville, Illinois 60048.

5. Zahner is a dissolved corporation formed under the laws of the State of Illinois with a principal place of business located in Gurnee, Illinois. The Office of the Illinois Secretary of State indicates that Zahner was dissolved effective February 12, 2016. Upon information and belief, Zahner can be served with process through Sandra Burkett at 736 Florsheim Drive, Suite 10, Libertyville, Illinois 60048.

6. PCC is a corporation formed under the laws of the State of Illinois with a principal place of business located in Gurnee, Illinois. Upon information and belief, PCC can be served with

process through its registered agent Sandra Burkett at 736 Florsheim Drive, Suite 10, Libertyville, Illinois 60048.

7. C. O'Brien is an individual and citizen of the State of Illinois and may be served with process at his residence at 405 N. Oakwood Avenue, Waukegan, Illinois 60085.

## II. JURISDICTION AND VENUE

8. This Court possesses original jurisdiction over Surety's claims against the Defendants pursuant to 28 U.S.C § 1332(a) because the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and the matter in controversy is between citizens of different states.

9. This Court possesses the power to declare the respective rights and other legal relations of Surety and the Defendants as requested herein pursuant to 28 U.S.C. § 2201(a).

10. Venue is proper in the Nashville Division of the Middle District of Tennessee under 28 U.S.C. § 123(b) and 28 U.S.C. § 1391(b)(3) because the Defendants have agreed that this Court is the appropriate forum and shall have jurisdiction over them with respect to the claims asserted by Surety in this action.

## III. FACTUAL ALLEGATIONS

### The Indemnity Agreement

11. Defendants Polymer, Rock-Tred, PC II, Zahner, and C. O'Brien (collectively, the "Indemnitors") executed an Agreement of Indemnity, dated June 14, 2012 (the "Indemnity Agreement"), in favor of Surety as inducement for Surety to issue certain surety bonds on behalf of one or more of the Indemnitors. A true and accurate copy of the Indemnity Agreement is attached as Exhibit 1.

12. The Indemnity Agreement defines "INDEMNITOR" to mean, individually and collectively, each of the Indemnitors.

13. Section 2 of the Indemnity Agreement states:

> **INDEMNITY & COLLATERAL FOR CLAIM**- The INDEMNITOR shall indemnify and save harmless the SURETY from and against any and all liability, claim, demand, loss, damages, expense, cost, attorney's fees and expenses, including without limitation, fees and disbursements of counsel incurred by the SURETY in any action or proceeding between the INDEMNITOR and the SURETY, or between the SURETY and any third party, which SURETY shall at any time incur by reason of its execution of any Bond or its payment of or its liability to pay any claim, irrespective of whether the claim is made against the SURETY as a joint or several obligor and whether the INDEMNITOR is then liable to make such payment, and to place the SURETY in funds to meet all of its liability under any Bond, promptly upon request and before the SURETY may be required to make any payment thereunder; and copy of the claim, demand, voucher or other evidence of the payment by the SURETY of any liability, claim, demand, loss, damage, expense, cost and attorney's fees, shall be prima facie evidence of the fact and amount of INDEMNITOR'S liability to the SURETY under this Agreement. Any demand upon the SURETY by the Obligee shall be sufficient to conclude that a liability exists and the INDEMNITOR shall then place the SURETY with sufficient funds in a form and amount deemed acceptable in the SURETY'S sole discretion, as collateral security to cover the liability.

Ex. 1, § 2.

14. Section 3 of the Indemnity Agreement states:

> **OTHER INDEMNITY-** The INDEMNITOR shall continue to remain bound under the terms of this Agreement even though the SURETY may have heretofore or hereafter, with or without notice to or knowledge of the Principals and the INDEMNITOR, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of said Bonds, from the principals or INDEMNITOR or others. The rights, powers and remedies given the SURETY under this Agreement shall be and are in addition to and not in lieu of, any and all other rights, powers and remedies which the SURETY may have or acquire against the Principals and INDEMNITOR or others, whether by the terms of any agreement or by operation of law or otherwise.

Ex. 1, § 3.

15. Section 7 of the Indemnity Agreement states:

**CHANGES, WAIVER OF NOTICE**- The SURETY is authorized and empowered, without notice to or knowledge of the INDEMNITOR, to assent to any change whatsoever in Bonds and/or the contracts or obligations covered by any said Bonds including but not limited to the time for performance and any continuations, extensions or renewals of the Bonds, the execution of any substitute or substitutes therefore, with the same or different conditions, provisions and obligees with the same or larger or smaller penalties; it being expressly understood and agreed that the INDEMNITOR shall remain bound under the terms of this Agreement even though any such assent by the SURETY does or might substantially increase the liability of the INDEMNITOR. The INDEMNITOR waives notice of the execution of Bonds, acceptance of this Agreement, default or other acts giving rise to a bond claim or liability of the SURETY under Bonds.

Ex. 1, § 7.

## The Cloud County Bonds and Settlement Agreement

16. Zahner and the Cloud County Public Building Commission, Cloud County Courthouse ("Cloud County") entered into a contract, dated September 17, 2012 (the "Contract"), for Zahner to build the Cloud County Sheriff's Office and Jail in Concordia, Kansas (the "Project").

17. In reliance on the promises made by the Indemnitors in the Indemnity Agreement, Surety issued Performance Bond No. K08534524 (the "Performance Bond") and Payment Bond No. K08534524 (the "Payment Bond") (collectively, the "Bonds") on behalf of Zahner, as principal, in relation to the Contract. True and accurate copies of the Bonds are attached as a collective Exhibit 2.

18. Certain disputes arose in relation to the Contract and the Project, and, in and around 2014, Surety received a number of claims on the Payment Bond from Zahner's subcontractors and suppliers asserting they had not received payment for work performed on the Project.

19. Surety sustained loss, costs, fees, and expenses satisfying, adjusting, and/or otherwise resolving the claims submitted under the Payment Bond and made demand on the Indemnitors for reimbursement of said loss, costs, fees, and expenses pursuant to their joint and several obligations under the Indemnity Agreement.

20. Surety and the Defendants entered into a Settlement and Release Agreement, dated October 20, 2014 (the "Settlement Agreement"). A true and accurate copy of the Settlement Agreement is attached as <u>Exhibit 3</u>.

21. The Settlement Agreement resolved only (a) the obligations of the Indemnitors to reimburse and indemnify Surety for the loss, costs, fees, and expenses that it had sustained, at that time, as a result of satisfying, adjusting, or otherwise resolving then-known claims on the Payment Bond and (b) certain disputes relative to the funds due or paid under the Contract.

22. In the Settlement Agreement, the Defendants specifically acknowledged that Surety continued to face exposure under the Performance Bond "for which the [Defendants] are obligated to Surety under the Indemnity Agreement." Ex. 3.

23. The Settlement Agreement did not resolve or release any claims by Surety against any of the Defendants, under the Indemnity Agreement or otherwise, in relation to claims made on either of the Bonds following the effective date of the Settlement Agreement. In fact, the Settlement Agreement imposed certain obligations on the Defendants, including PCC, in addition those obligations found in the Indemnity Agreement.

24. Section 2 of the Settlement Agreement states, in pertinent part:

**Payment Bond Claims Made Against the Surety After the Effective Date; Claims Under the Performance Bond; the El Dorado Claim.** Indemnitors acknowledge and agree that they are jointly and severally obligated to indemnify and save harmless the Surety from and against any and all claims made or asserted against the Surety under the Bonds. Indemnitors and Prime Coat agree to cooperate and assist Surety with its investigation, evaluation, defense or appeal of any claims

6

under the Bonds, including, but not limited to, the claim that El Dorado Plumbing and Heating has asserted under the Payment Bond (the "El Dorado Claim"), and agree to reimburse Surety, upon demand, for any and all costs and expenses, including, without limitation, attorneys' fees, incurred by Surety in connection with its investigation, evaluation, defense or appeal of any claims under the Bonds, pursuant to the terms of the Indemnity Agreement.

Ex. 3, § 2.

25. Thus, in the Settlement Agreement, the Indemnitors reaffirmed their obligations to Surety under the Indemnity Agreement in relation to the Bonds and PCC, not an initial signatory to the Indemnity Agreement, promised to assist Surety in the investigation or defense of any claims on the Bonds and to reimburse Surety for all costs and expenses incurred by Surety in relation to such investigation, pursuant to the terms of the Indemnity Agreement.

26. Section 2(a) of the Settlement Agreement further states:

Upon receipt of any claim made or asserted against the Surety under the Bonds after the Effective Date, or. any claim or claim materials provided to Surety in connection with the El Dorado Claim, Surety shall provide a copy of any such claim and claim materials to Indemnitors and Prime Coat as follows: c/o Christopher J. O'Brien, 405 N. Oakwood Ave. Waukeegan, Illinois 60085, email: cobrien@primecoat.com. Additionally, Surety shall provide a copy of any such claim and claim materials to Indemnitors' and Prime Coat's accountants, as follows: c/o Rita Grunert, Burkett & Beattie, Inc., 740 Florsheim Dr., Suite 11, Libertyville, Illinois 60048, email: ritag@burkettbeattie.com (the "Accountant")[.]

Ex. 3, § 2.

27. Section 2(b) of the Settlement Agreement further states:

The Indemnitors and Prime Coat shall promptly advise Surety and the Accountant of the amounts due and owing to any claimant under the Bonds, and any defenses that Principal may have to any such claim, including, but not limited to, the El Dorado Claim. **Surety will have the exclusive right for itself and for Indemnitors to decide and determine whether any such claim, including the El Dorado Claim, will be paid, settled, defended, or appealed**, provided that in making such determination, Surety will take into account the good-faith defenses or other good-faith responses which have been asserted by Indemnitors in opposition to such claim, demand, suit, or judgment. Subject to the foregoing, any

determination made by Surety regarding whether any such claim should be paid, settled, defended or appealed, or that either Surety was or might be liable therefor or such payments are or may be necessary or advisable to protect any of Surety's rights or to avoid or lessen Surety's liability or alleged liability, shall be binding upon the Indemnitors and Prime Coat. **In the event Surety determines that any such claim should be paid**, it will provide written direction to the Indemnitors, Prime Coat and the Accountant, that payment should be made, and **the Indemnitors and Prime Coat shall pay or cause to be paid such claim and obtain a release from such claimant in a form acceptable to Surety, within fifteen (15) days of receipt of Surety's written direction**.

Ex. 3, § 2 (emphasis added). Thus, in the Settlement Agreement, the Defendants agreed to pay or satisfy any claim on the Bonds that Surety determined should be paid within fifteen (15) days of receipt of such direction from Surety.

28. Section 5 of the Settlement Agreement defines an "Event of Default" to include "default by any Indemnitor in the payment **or performance** of **any** obligation or covenant contained in this Agreement." Ex. 3, § 5 (emphasis added). Section 5 of the Settlement Agreement further states, in pertinent part:

> If any Event of Default occurs, Surety shall be entitled to seek recovery from the Indemnitors and Prime Coat any and all loss, costs, expenses, including, without limitation, attorneys' fees, to which it is or may be entitled under the Bonds and the Indemnity Agreement or otherwise, and nothing herein shall be deemed to alter, limit or modify any rights and remedies of Surety under the Indemnity Agreement, its Bonds or otherwise.

Ex. 3, § 5.

29. Section 8 of the Settlement Agreement states:

The Parties hereto acknowledge, confirm and agree that this Agreement will be deemed to be a contract under the laws of the State of Tennessee and for all purposes will be governed by and construed and enforced in accordance with the laws of such State, both substantive and procedural. Additionally, the Parties hereto irrevocably consent to personal jurisdiction in the State of Tennessee, and to the extent the United States District Courts of Tennessee otherwise have subject matter jurisdiction, to the exclusive jurisdiction of the United States District Courts of Tennessee for the purpose of any litigation concerning this Agreement, the Bonds

8

Case 3:23-cv-01139    Document 1    Filed 10/27/23    Page 8 of 17 PageID #: 8

and the Indemnity Agreement notwithstanding any provision in the Indemnity Agreement to the contrary.

Ex. 3, § 8. Thus, the Defendants agreed to submit to the jurisdiction of this Court in relation to Surety's claims against them as set forth herein.

## The Cloud County Lawsuit

30. On May 2, 2023, Cloud County filed a lawsuit against Surety in the Twelfth Judicial District Court for Cloud County, Kansas, Civil Department, asserting claims against Surety under the Performance Bond in relation to the alleged performance failures of Zahner under the Contract and in relation to the Project. A true and accurate copy of Cloud County's Complaint is attached as <u>Exhibit 4</u>.

31. In its Complaint, Cloud County asserted that:

Zahner failed to perform under the Construction Contract, and the work performed by Zahner and its subcontractors was defective and resulted in property damage to the jail facility. Some or all of the defects in performance were hidden and undiscoverable until well after completion of the Project.

Ex. 4, ¶ 8.

32. In its Complaint, Cloud County further asserted:

The defects included failures associated with assembly of the pre-engineered metal building, the roof, and other systems that caused water intrusion and damage to the structure that had not been corrected by Zahner.

Ex. 4, ¶ 9.

33. In its Complaint, Cloud County asserted damages against Surety under the Performance Bond in an amount no less than $1,380,639. *See* Ex. 4, ¶ 12.

34. Surety removed Cloud County's lawsuit to the U.S. District Court for the District of Kansas, initiating Case No. 23-4039-JAR-RES (the "Lawsuit").

35. Thus, Surety notified the Defendants of Cloud County's claim on the Performance Bond, and the existence of the Lawsuit, pursuant to Section 2(a) of the Settlement Agreement.

36. Upon receipt, the Defendants notified Surety of certain defenses that they believe existed in relation to Cloud County's claim on the Performance Bond, and Surety used those defenses to negotiate a favorable and good faith settlement of the claim, as discussed below.

37. The Scheduling Order entered in the Lawsuit required Cloud County and Surety to mediate their case prior to October 27, 2023. Pursuant to this Order, Cloud County and Surety arranged for mediation on October 10, 2023, and invited C. O'Brien, as a representative of the Defendants, to attend.

38. Prior to the mediation and in order to avoid its costs, Cloud County engaged Surety in settlement discussions, indicating that it would be willing to accept $350,000, **an almost $1 million discount of its full claim**, in resolution of its claims against Surety on the Performance Bond.

39. Pursuant to its rights and obligations under the Bonds, the Indemnity Agreement, and the Settlement Agreement, Surety determined that Cloud County should be paid the sum of $350,000 in resolution of its claim on the Performance Bond.

40. Surety took into account and effectively utilized the defenses raised by the Defendants in resolving, in good faith, Cloud County's claim on the Performance Bond for a substantial discount.

41. Pursuant to the Settlement Agreement and upon making its determination, Surety provided written direction to the Defendants that they should pay said claim in the amount of $350,000 and obtain a release of Surety from Cloud County.

42. More specifically, in a letter dated October 3, 2023, Surety (1) notified the Defendants that it had determined that Cloud County's claims on the Performance Bond should be resolved for $350,000 and (2) demanded that the Defendants, pursuant to their obligations under the Indemnity Agreement and the Settlement Agreement, pay the sum of $350,000 to Cloud County in resolution of its claims. A true and accurate copy of the October 3, 2023 demand letter is attached as Exhibit 5.

43. The October 3, 2023 demand letter sets forth Surety's reasoned and researched analysis of Cloud County's claim on the Performance Bond and its basis for settling the claim for a $1 million discount. *See* Ex. 5, pgs. 3-5.

44. The October 3, 2023 demand letter also demanded that the Defendants reimburse Surety for the sum of $32,902.77 that it had expended in fees, costs, and expenses associated with defending Cloud County's claims and the Lawsuit.

45. Despite demand, the Defendants failed and refused to remit payment to Cloud County or reimburse Surety for its fees, costs, and expenses, as they promised to do in the Indemnity Agreement and the Settlement Agreement.

46. Such conduct constitutes an "Event of Default" under the Settlement Agreement, further authorizing Surety to enforce its right of recovery against the Defendants under the Settlement Agreement and the Indemnity Agreement.

47. Surety resolved and paid Cloud County's claim on the Performance Bond for the sum of $350,000 in good faith and based on the belief that it may be liable for said payment and/or that it was necessary to protect Surety's rights and to avoid or lessen Surety's actual or alleged liability. A true and accurate copy of Surety's settlement with Cloud County is attached as Exhibit 6, and a true and accurate copy of Surety's payment to Cloud County is attached as Exhibit 7.

48. The Defendants have breached the Indemnity Agreement and the Settlement Agreement, causing damage to Surety for which the Defendants are jointly and severally liable.

## CAUSES OF ACTION

### Count I – Breach of the Indemnity Agreement

49. Surety hereby restates the averments contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

50. Under Section 2 of the Indemnity Agreement, as more fully set forth therein, the Indemnitors are contractually obligated to indemnify and save harmless Surety from and against any and all liabilities, claims, demands, losses, damages, expenses, costs, fees, and expenses, including fees and disbursements of counsel, incurred by Surety by reason of (1) its execution of the Bonds or (2) receipt, defense, and/or satisfaction of any claim on the Bonds.

51. Under Section 2 of the Settlement Agreement, as more fully set forth therein, the Indemnitors expressly acknowledged and agreed that they remained jointly and severally obligated to indemnify and save harmless Surety from and against any and all claims made or asserted against Surety under the Bonds after the effective date of the Settlement Agreement.

52. Cloud County asserted its claim on the Performance Bond subsequent to the effective date of the Settlement Agreement.

53. Surety has incurred current, unreimbursed losses, damages, expenses, costs, fees, and expenses in an amount no less than $382,902.77 as a result of having issued the Bonds on behalf of Zahner and at the request of the Indemnitors and in relation to its receipt, defense, and satisfaction of Cloud County's claim on the Performance Bond, for which the Indemnitors are jointly and severally obligated to indemnify and save harmless Surety pursuant to the Indemnity Agreement.

54. Because Surety continues to incur losses, damages, expenses, costs, fees, and expenses as a result of having issued the Bonds and in relation to Cloud County's claim on the Performance Bond, including the fees and expenses associated with the failure of the Indemnitors to honor their obligations under the Indemnity Agreement and the Settlement Agreement, Surety expressly reserves the right to modify and increase its demand on the Indemnitors.

55. Despite demand, the Indemnitors have failed and refused to indemnify and save harmless Surety in relation to those current, unreimbursed losses, damages, expenses, costs, fees, and expenses incurred as a result of having issued the Bonds and in relation to its receipt, defense, and satisfaction of Cloud County's claim on the Performance Bond as required by the Indemnity Agreement.

56. The failure of the Indemnitors to indemnify and save harmless Surety in relation to those current, unreimbursed losses, damages, expenses, costs, fees, and expenses incurred as a result of having issued the Bonds and in relation to its receipt, defense, and satisfaction of Cloud County's claim on the Performance Bond constitutes a material breach of the Indemnity Agreement.

57. Surety has been damaged as a result of the Indemnitors' material breach of the Indemnity Agreement in an amount currently exceeding $382,902.77.

58. Therefore, Surety is entitled to the entry of judgment against the Indemnitors in an amount necessary to fully indemnify and save harmless Surety in relation to those current, unreimbursed losses, damages, expenses, costs, fees, and expenses incurred as a result of having issued the Bonds and in relation to its receipt, defense, and satisfaction of Cloud County's claim on the Performance Bond, which amount currently exceeds $382,902.77 and will be proven at trial.

## Count II – Breach of the Settlement Agreement

59. Surety hereby restates the averments contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

60. Under Section 2 of the Settlement Agreement, as more fully set forth therein, the Indemnitors expressly acknowledged and agreed that they remained jointly and severally obligated to indemnify and save harmless Surety from and against any and all claims made or asserted against Surety under the Bonds after the effective date of the Settlement Agreement.

61. Further, under Section 2 of the Settlement Agreement, as more fully set forth therein, the Defendants agreed to reimburse Surety, upon demand, for any and all costs and expenses, including attorney's fees, incurred by Surety in its investigation, evaluation, defense, or appeal of any claims on the Bonds.

62. Further, under Section 2 of the Settlement Agreement, as more fully set forth therein, the Defendants agreed to pay and satisfy any claim on the Bonds that Surety, upon considering any good faith defenses of the Defendants, determined should be paid.

63. Cloud County asserted its claim, alleged to be over $1.3 million, on the Performance Bond subsequent to the effective date of the Settlement Agreement.

64. Surety notified the Defendants of Cloud County's claim pursuant to Section 2(a) of the Settlement Agreement.

65. Surety took into account the defenses offered by the Defendants to Cloud County's claim to negotiate a good faith settlement of the claim for a substantial discount.

66. In a letter dated October 3, 2023, Surety demanded that the Defendants pay Cloud County $350,000 in resolution of its claims and that the Defendants reimburse Surety for the $32,902.77 that it had expended in fees, costs, and expenses in relation to the Cloud County claims.

67. Despite demand, the Defendants failed and refused to pay Cloud County or reimburse Surety for its fees, costs, and expenses, as they promised to do in the Settlement Agreement.

68. Such conduct by the Defendants constitutes a breach of the Settlement Agreement and an "Event of Default" under the Settlement Agreement, authorizing Surety to enforce all available remedies against the Defendants.

69. Surety resolved and paid Cloud County's claim on the Performance Bond for the sum of $350,000 in good faith and based on the belief that it may be liable for said payment and/or that it was necessary to protect Surety's rights and to avoid or lessen Surety's actual or alleged liability.

70. Thus, Surety has been damaged as a result of the Defendants' material breach of the Settlement Agreement in an amount currently exceeding $382,902.77.

71. Therefore, Surety is entitled to an entry of judgment against the Defendants an amount necessary to fully indemnify and save harmless Surety in relation to those current, unreimbursed losses, damages, expenses, costs, fees, and expenses incurred as a result of having issued the Bonds and in relation to its receipt, defense, and satisfaction of Cloud County's claim on the Performance Bond, which amount currently exceeds $382,902.77 and will be proven at trial.

### Count III – Equitable Indemnity, Reimbursement and Exoneration
### (Zahner)

72. Surety hereby restates the averments contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

73. Pursuant to common law right of exoneration, indemnification, and reimbursement, Surety is entitled to exoneration, indemnification, and/or reimbursement from Zahner, as the

15

Case 3:23-cv-01139   Document 1   Filed 10/27/23   Page 15 of 17 PageID #: 15

principal on the Bonds, for all loss suffered by Surety, as surety, by reason of having issued the Bonds on behalf of Zahner.

74. Therefore, Zahner is liable to Surety for all losses suffered and anticipated to be suffered by Surety by reason of having issued the Bonds on behalf of Surety, which amount currently exceeds $350,000 and will be proven at trial.

WHEREFORE PREMISES CONSIDERED, Surety prays for the following relief:

a) For the issuance of process requiring each of the Defendants to answer Surety's Complaint;

b) For the entry of judgment against the Indemnitors, jointly and severally, in an amount necessary to fully indemnify and save harmless Surety in relation to those current, unreimbursed losses, damages, expenses, costs, fees, and expenses incurred as a result of having issued the Bonds and in relation to its receipt, defense, and satisfaction of Cloud County's claim on the Performance Bond, which amount currently exceeds $382,902.77 and will be proven at trial;

c) For the entry of judgment against the Defendants, jointly and severally, in an amount necessary to fully indemnify and save harmless Surety in relation to those current, unreimbursed losses, damages, expenses, costs, fees, and expenses incurred as a result of having issued the Bonds and in relation to its receipt, defense, and satisfaction of Cloud County's claim on the Performance Bond, which amount currently exceeds $382,902.77 and will be proven at trial;

d) For the entry of a judgment against Zahner for all losses suffered and anticipated to be suffered by Surety by reason of having issued the Bonds on behalf of Zahner, which amount currently exceeds $350,000 and will be proven at trial; and

e) For such further relief, both general and specific, as may be appropriate in accordance with the nature of the cause including, but not limited to, pre-judgment and post-judgment interest.

Respectfully submitted,

*/s/ Melissa Jane Lee*
Scott C. Williams (BPR # 021757)
Melissa Jane Lee (BPR # 029228)
Taylor S. Ward (BPR #037653)
MANIER & HEROD
1201 Demonbreun Street, Suite 900
Nashville, Tennessee 37203
(615) 244-0030
(615) 242-4203 (facsimile)
swilliams@manierherod.com
mlee@manierherod.com
tward@manierherod.com
*Attorneys for Westchester Fire Insurance Company*